UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| THOMAS SEXTON and CHARLOTTE SEXTON, | ) ) ) |
| Plaintiffs, | ) ) Civil Action No. 5: 15-329-DCR ) |
| V. | ) ) |
| BANK OF NEW YORK MELLON, f/k/a Successor in interest to JP Morgan Chase Bank, NA as Trustee for IXIS Real Estate Capital Trust 2005-HE2, et al., | ) ) ) **MEMORANDUM OPINION** ) **AND ORDER** ) ) |
| Defendants. | ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of Defendant Reisenfeld and Associates' ("RA") motion to dismiss the claims asserted against it. [Record No. 6] Plaintiffs Thomas and Charlotte Sexton allege that the defendants violated several provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and that they invaded their privacy by sending a "dunning" letter while they were represented by counsel in a pending foreclosure action. [Record No. 1] RA contends that the Complaint fails to state a claim against it under the FDCPA and state law. [Record No. 6] For the reasons outlined below, the Court agrees with RA's arguments and will grant the relief sought.

**I.**

On March 31, 2009, Defendant Bank of New York Mellon ("BONY"), as successor to JPMorgan Chase Bank, N.A., filed a foreclosure action against the Sextons in the Bourbon Circuit Court. [Record No. 1, ¶ 8] According to the plaintiffs, BONY is a default loan

operator. [*Id.*, ¶ 5] The bank attempted to collect $99.668.30, as well as accrued interest and costs, due to an alleged default on a loan secured by property conveyed to the Sextons. [*Id.*, ¶¶ 8, 34; Record No. 1-3] BONY retained the law firm Manley Deas Kochalski to represent it in the litigation. [Record No. 1, ¶ 9] Sixteen days later, Mortgage Electronic Registration Systems, Inc. ("MERS") assigned the loan to Mortgage Pass-Through Certificates, Series 2002-HE2. [*Id.*, ¶ 33; Record No. 1-4] On May 11, 2009, the Sextons, represented by attorney Brian T. Canupp, filed their Answer with the Bourbon Circuit Court. [Record No. 1, ¶ 10]

On September 15, 2011, MERS assigned the loan to IXIS Capital Trust 2005-HE2. [*Id.*, ¶ 32; Record No. 1-3] In January 2014, Select Portfolio Servicing ("SPS") became the servicer of the loan. [Record No. 1, ¶ 31] The foreclosure case was dismissed for lack of prosecution on May 5, 2015. [*Id.*, ¶ 24; Record No. 1-2]

On October 31, 2014, while the foreclosure action was still pending, the law firm RA sent a debt validation notice to the plaintiffs after being retained by Select Portfolio Servicing to represent BONY. [Record No. 1, ¶¶ 12, 18] The Sextons label this notice a "dunning" letter. [*Id.*, ¶ 20] The notice claimed that RA was a debt collector and stated, in relevant part,

> [t]he Creditor has represented to us that the Loan is in default because of non-payment of the Debt. We have been asked by the Creditor to bring a foreclosure on the real estate which secures the repayment of the Debt. This Notice is required to be sent to advise you of certain rights provided to you by Law.

[Record No. 1-1, p. 1] The notice identified the "Original Amount Financed" as $104,500.00. [*Id.*] It also explained that "[t]he Creditor has represented that as of the date of this letter the total balance of your loan is $167,145.93. Because of interest, late charges, and other charges . . . the amount due on the day you pay may be greater." [*Id.*, p. 2] The notice went on to advise:

> [u]nless you notify this office within thirty (30) days after receiving this Notice that you dispute the validity of this Debt . . . this office will assume that the Debt is valid. If you notify this office in writing within thirty (30) days from receiving this Notice, this office must obtain verification of the Debt . . .

[*Id.*] Finally, the letter stated that, "[i]f you are represented by an attorney, please notify the undersigned in writing with the name and phone number of your attorney." [*Id.*] The plaintiffs received the letter on November 5, 2014. They do not claim that they responded to it. [Record No. 1, ¶ 13]

The Sextons assert that the amount identified in the letter was not the amount sought in Bourbon Circuit Court, and they deny the alleged debt. [*Id.*, ¶¶ 27, 29] Based on the aforementioned events and letter, the plaintiffs filed this action on November 2, 2015, alleging violations of the FDCPA and an accompanying state law inclusion upon seclusion claim. [*Id.*, ¶¶ 51−63] They request both actual and statutory damages under 15 U.S.C. §§ 1692k(a)(1) and 1692k(a)(2)(A), respectively. [*Id.*, p. 10]

On November 24, 2015, RA filed the instant motion to dismiss. [Record No. 6] It argues that the Complaint fails to properly plead the FDCPA elements and/or allege facts supporting the different theories of recovery. The plaintiffs did not file a response in opposition to the motion to dismiss and it is now ripe for review.[1]

## II.

When evaluating a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must determine whether the Complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

---

[1] While courts may sometimes deem a plaintiff to have waived opposition to a motion by failing to respond, the Court has not done so here. *See Scott v. Tenn.*, 878 F.2d 382 (table), 1989 WL 72470, *2 (6th Cir. 1989).

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although the Complaint need not contain "detailed factual allegations" to survive a motion to dismiss, the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).

In considering a Rule 12(b)(6) motion, the Court is required to "accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief." *G.M. Eng'rs & Assoc., Inc. v. W. Bloomfield Twp.*, 922 F.2d 328, 330 (6th Cir. 1990) (citation omitted). However, the Court need not accept as true legal conclusions cast in the form of factual allegations if those conclusions cannot be plausibly drawn from the facts, as alleged. *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986) (noting that in reviewing a motion to dismiss, the district court "must take all the factual allegations in the complaint as true," but that the court is "not bound to accept as true a legal conclusion couched as a factual allegation"). Thus, Rule 12(b)(6) essentially "allows the Court to dismiss, on the basis of a dispositive issue of law, meritless cases which would otherwise waste judicial resources and result in unnecessary discovery." *Glassman, Edwards, Wade & Wyatt, P.C. v. Wolf Haldenstein Adler Freeman & Herz, LLP*, 601 F. Supp. 2d 991, 997 (W.D. Tenn. 2009).

### III.

A. **FDCPA Claims**

The Sextons argue that RA violated several provisions of the FDCPA by sending them the October 31, 2014 letter, specifically: 15 U.S.C. §§ 1692c; 1692c(a)(2); 1692d; 1692e; 1692e(2); 1692e(5); 1692e(10); 1692f; 1692g; and 1692(j). [Record No. 1, ¶ 35] The FDCPA prohibits the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt" and the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. §§ 1692e, f(1). Where a plaintiff brings claims under the FDCPA, the claims are tested under the "least sophisticated consumer" standard; that is, "whether the least sophisticated consumer would be misled by [the] defendant's actions." *Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012) (internal quotation marks omitted).

The purpose of the FDCPA is to protect consumers from abusive, deceptive, and unfair debt collection practices. 15 U.S.C. § 1692, *et seq*. It should be construed broadly to accomplish this purpose. *Stratton v. Portfolio Recovery Assoc., LLC*, 770 F.3d 443, 448 (6th Cir. 2014). For the purposes of analyzing the arguments in the present motion to dismiss, the Court has presumed that RA is a "debt collector" and that the Sextons are "consumers" within the meaning of the FDCPA, 15 U.S.C. §§ 1692a(3), (6) and 1692c(d).

1. § 1692c

Under this section of the FDCPA,[2] a "debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address . . . ." 15 U.S.C. § 1692c(a)(2).[3] In other words, a debt collector violates this section of the Act by communicating directly with a consumer "despite having knowledge" that the consumer is represented by counsel. *Estep v. Manley Deas Kochalski, LLC*, 552 F. App'x 502, 504 (6th Cir. 2014).

The plaintiffs allege that RA "communicated with the Plaintiffs herein in connection with the attempt to collect the alleged debt after the Plaintiffs herein were represented by an attorney." [Record No. 1, ¶ 40] However, the Sextons claim that the other entities had "knowledge" that they were represented by an attorney at the relevant time. [*Id.*, ¶¶ 41, 42] Thus, the plaintiffs do not even *allege* an element of 15 U.S.C. § 1692c(a)(2) with respect to RA. Nor do they identify any facts from which the Court can infer knowledge on the part of RA. *See, e.g.*, *Hubbard v. Nat'l Bond and Collection Assoc., Inc.*, 126 B.R. 422, 427 (D. Del. 1991). For example, the Sextons do not contend that RA was aware of the foreclosure action pending in October 2014. *Compare Estep v. Manley Deas Kochalski, LLC*, 942 F. Supp. 2d 758, 768 (S.D. Ohio 2013) (plaintiffs did not need to explicitly plead knowledge where they alleged that defendant had filed state court action, plaintiffs' counsel had answered, and same

---

[2]  Although the plaintiffs identify § 1692c separately from § 1692c(a)(2) [Record No. 1, ¶ 35], none of the other subsections appear to apply to the allegations in the Complaint. For instance, no alleged facts support a theory that RA communicated with third parties, § 1692c(b), or that RA refused to cease communications following notification from the plaintiffs, § 1692c(c).

[3]  This provision includes some exceptions, but they are not relevant here.

defendant then attempted communication directly with plaintiffs), *aff'd by* 552 F. App'x 502 (6th Cir. 2014).

The defendant anticipates that the plaintiffs seek to impute BONY's knowledge to RA. [Record No. 6, p. 4]  However, "a plaintiff must plead actual knowledge under the FDCPA in order to state a claim upon which relief may be granted."  *Schmitt v. FMA Alliance*, 398 F.3d 995, 997 (8th Cir. 2005); *Mullen v. Compton*, No. 2:11-cv-1159, 2013 WL 372470, *4 (S.D. Ohio. Jan. 30, 2013); Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50,104 (Dec. 13, 1988).  While an agent's knowledge is imputed to the principal, the converse is not true.  *Schmitt*, 398 F.3d at 997. Further, evidence of constructive knowledge will not suffice.  *Hubbard*, 126 B.R. at 427. Although some cases have only required the plaintiff to allege that the defendant knew or should have known that he was represented by counsel, the Court declines to follow that approach due to the plain language of the statutory provision, the Federal Trade Commission Commentary, and the weight of precedent.  *See, e.g.*, *Gonzales v. Stillman Law Office*, No. 1:14-cv-1236, 2015 WL 4903344, *6 (W.D. Mich. Aug. 17, 2015).

Here, the plaintiffs likely contend that RA should have been aware of the pending state court action, as well as the fact that they were represented by an attorney.  Because constructive and imputed knowledge do not suffice to establish "knowledge" under 15 U.S.C. § 1692c(a)(2), *see Schmitt*, 398 F.3d at 997, the Sextons fail to state a claim under Rule 12(b)(6) for RA's violation of that provision.[4]  *See Twombly*, 550 U.S. at 555.

---

[4]  The plaintiffs also fail to allege that RA had knowledge of, or could readily ascertain, Attorney Canupp's name and address, 15 U.S.C. § 1692c(a)(2); however, because RA represented the interests of BONY, it could likely "readily ascertain" such information.

**2. § 1692g**

In its initial communications with a consumer, a debt collector must send the consumer a written notice containing: (i) the amount of the debt; (ii) the name of the creditor; (iii) a statement that the debt will be assumed valid unless the consumer disputes the validity of the debt within thirty days of receiving the notice; (iv) a statement that the debt collector will obtain verification of the debt if the consumer notifies it in writing within thirty days that the debt is disputed; and (v) a statement that the debt collector will provide the name and address of the original creditor upon written request of the consumer. 15 U.S.C. § 1692g(a)(1)−(5). Such a written notice is termed a "validation notice." *Pierson v. Franklin Collection Serv.*, 965 F. Supp. 2d 957, 967 (E.D. Tenn. 2013). Its purpose is "to eliminate the recurring problem of debt collectors dunning the wrong person or attempting to collect debts which the consumer has already paid." *Todd v. Capital One Fin. Corp.*, No. 3:07-cv-189-S, 2007 WL 3306097, *2 (W.D. Ky. Nov. 6, 2007) (quoting S. REP. No. 95–382, at 4 (1977)). The notice must be "effectively convey[ed]." *Smith v. Computer Credit, Inc.*, 167 F.3d 1052, 1054 (6th Cir. 1999). The Sixth Circuit uses the "least sophisticated consumer standard" to determine whether the debt collector appropriately conveyed the notice of rights to the consumer. *Id.* For example, language that appears to shorten the thirty-day period may "overshadow[]" the validation notice. *Pierson*, 965 F. Supp. 2d at 968.

In the present action, RA complied with the requirements in 15 U.S.C. § 1692g(a). First, it identified the amount of the debt─$167,145.93─ and the name of the creditor─BONY. 15 U.S.C. § 1692g(a)(1)−(2). [Record No. 1-1, pp. 1−2] Second, the defendant stated that it would assume that the debt was valid unless the plaintiffs notified it of a dispute within thirty days. 15 U.S.C. § 1692g(a)(3). [*Id.*, p. 2] Next, RA notified the Sextons of the verification

process, which is triggered by a written dispute. 15 U.S.C. § 1692g(a)(4). [*Id.*] Lastly, the firm promised to provide the original creditor's contact information upon written request. 15 U.S.C. § 1692g(a)(5). [*Id.*] The language is clear, and the plaintiffs did not advance any explanation in their Complaint concerning RA's non-compliance with these requirements. Accordingly, the validation notice did not violate § 1692g(a). *See Richeson v. Javitch, Block & Rathbone, LLP*, 576 F. Supp. 2d 861, 866 (N.D. Ohio 2008).

Perhaps the plaintiffs instead claim that RA violated § 1692g(b). Under that subsection, if a consumer notifies a debt collector in writing within the 30-day period that he disputes the debt, the debt collector "shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, . . ." 15 U.S.C. § 1692g(b). Here, the defendant argues that the Sextons fail to allege a violation of that subsection because they did not request validation of the debt within 30 days of receiving the October 31, 2014 letter. [Record No. 6, p. 6] Because the plaintiffs do not even contend that they submitted a written notification to RA, a claim under this subsection cannot survive a motion to dismiss. *See Howard v. Asset Acceptance, LLC*, No. 5:12-316-DCR, 2013 WL 1760299 (E.D. Ky. Apr. 24, 2013). Due to the Sextons' failure to allege facts suggesting that RA violated 15 U.S.C. § 1692g, this claim will be dismissed as to that defendant.[5]

---

[5] In fact, with respect to most of the FDCPA violations alleged in this action, "the Court is essentially left to guess as to what acts the Defendants are alleged to have taken that constitute violations" of the different sections. *See Goodman v. Nationstar Mortg., LLC*, No. 3:13-1377, 2014 WL 1385861, *4 (M.D. Tenn. Apr. 9, 2014). "Merely positing a theory of legal liability that is unsupported by specific factual allegations does not state a claim for relief which survives a motion to dismiss." *Id.* The Court doubts that an analysis of each separate provision is necessary where the Complaint is as deficient with respect to the claims against RA as it is here. Nonetheless, the Court has attempted to anticipate the plaintiffs' arguments regarding each claim.

### 3. § 1692j

Under the FDCPA,

> [i]t is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.

15 U.S.C. § 1692j(a). This provision prohibits "flat-rating," where an entity lends its name to a creditor for "intimidation value" in exchange for a "flat" rate for the letter. *Nielsen v. Dickerson*, 307 F.3d 623, 639 (7th Cir. 2002); *see also Byrd v. Law Offices of John D. Clunk Co., LPA*, No. 1:09-cv-076, 2010 WL 816932, *7 (S.D. Ohio Mar. 8, 2010). In other words, a flat-rater is not involved in debt collection. *Randle v. GC Servs. L.P.*, 48 F. Supp. 2d 835, 841 (N.D. Ill. 1999).

The Sextons have made no showing that they are entitled to relief under this section. *See, e.g.*, *Savage v. Hatcher*, 109 F. App'x 759, 762 (6th Cir. 2004). "[T]hey must do more than quote Subsection (a) of that statute." *See Henry v. Mortg. Elec. Registration Sys., Inc.*, No. 2:15-cv-12469, 2015 WL 9487859 (E.D. Mich. Nov. 30, 2015). The plaintiffs do not deny that RA "itself created and used" the validation letter. *See Byrd*, 2010 WL 816932, at *7. Nor do they contend that RA was not participating in the collection of the underlying debt. In fact, they assert that RA is a "debt collector" and that the firm was attempting to collect a debt with the October 31, 2014 letter.[6] [Record No. 1, ¶ 17] Consequently, the plaintiffs' own contentions refute that RA violated 15 U.S.C. § 1692j(a).

---

[6] *Byrd* suggests that a showing that other entities are attempting to collect a debt might indicate that flat-rating is occurring. 2010 WL 816932, at *7. While such facts might be relevant where the plaintiff claims that the entity furnishing the form is not involved in the collection process, they are not relevant where the plaintiff alleges that the entity furnishing the forms is

**4. § 1692d**

According to 15 U.S.C. § 1692d, "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." That section then sets out six examples of violations: (i) the use or threat of violence or other criminal means to harm a person or his property; (ii) the use of obscene or abusive language; (iii) the publication of a list of non-paying consumers; (iv) the advertisement for sale of a debt to coerce payment; (v) continuously calling a person to annoy or harass him; and (vi) placing telephone calls without disclosing the caller's identity. 15 U.S.C. § 1692d(1)−(6).

Courts have dismissed claims premised on facts that do not have the "natural consequence of harassing or abusing a debtor." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330 (6th Cir. 2006). In *Harvey*, the court held that the "single filing of a debt-collection lawsuit" did not constitute a violation of § 1692d. *Id.* Likewise, a debt collector does not violate that section of the statute by mailing the consumers a bill. *Masterson v. Meade Cnty. Fiscal Ct.*, 489 F. Supp. 2d 740, 758 (W.D. Ky. 2007).

The Complaint asserts that RA violated § 1692d by sending the Sextons, rather than their counsel, the October 31, 2014 letter, which contained an incorrect debt amount. [Record No. 1, ¶¶ 12, 22−23] The "transmission of a single collection letter to a represented debtor" does not, as a matter of law, "have a natural consequence of harassing or abusing a debtor."

---

attempting to collect the debt. Here, BONY had initiated a lawsuit attempting to collect on the debt. [Record No. 1, ¶ 8] RA's debt validation notice indicated that it was acting at the behest of SPS as BONY's representative. [Record No. 1-1] Although there is some confusion regarding why BONY had retained two law firms to collect on the debt, the plaintiff never specifically asserts that RA was not participating in debt collection for creditor BONY. Because the Sextons do not plead the elements of 15 U.S.C. § 1692j(a), they cannot state such a claim against RA.

*Eslava v. AllianceOne Receivables Mgmt., Inc.*, Civil Action No. 12-0425-WS-N, 2012 WL 4336012, *3 (S.D. Ala. Sept. 20, 2012) (defendant sent dunning letter to plaintiff while she was represented by counsel). While the present case is different from *Eslava* because the Sextons argue that the debt amount was incorrect, such a distinction does not warrant differential treatment. The October 31, 2014 letter clearly indicated that the Sextons had a right to dispute the debt. [Record No. 1-1, p. 2] Further, RA notified the plaintiffs that the creditor had represented such an amount to them and that the amount was unverified. [*Id.*] Moreover, debt collectors are not required to verify the amount of the debt before sending a validation notice. *See* 15 U.S.C. § 1692g(a)(4). As a result, RA could not have violated § 1692d by merely sending a debt validation notice containing an incorrect debt amount to the plaintiffs.

However, the plaintiffs might contend that the validation notice was abusive or harassing because a foreclosure action against the Sextons had been pending in state court since 2009. Such a contention is not persuasive because the notice specifically informed the plaintiffs that they could dispute the debt to prevent an anticipated (second) foreclosure action. [Record No. 1-1, p. 2] Even the least sophisticated consumer would realize that RA had not verified the debt and that he could trigger such verification. In light of the Sixth Circuit's focus on the "tactics" or means of contacting the plaintiffs, the Sextons' facts do not suggest actions "likely to cause the suffering and anguish" contemplated by the Act. *See Harvey*, 453 F.3d at 330 (internal quotation marks omitted); *see also Wilson v. Merchants & Med. Credit Corp.*, No. 09-12996, 2010 WL 3488617, *4 (E.D. Mich. Sept. 2, 2010) (finding no violation where defendant told plaintiff on phone that he would "turn the case over" and "further the

investigation," and stated that "we know where you work, we know where you live, we know what kind of car you drive"). Therefore, this claim will be dismissed as to RA.

### 5. § 1692e

Under 15 U.S.C. § 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." That section then sets out examples of conduct that violates the statute. Relevant here are subsections (2), (5), and (10). First, a debt collector may not make a "false representation" concerning the "character, amount, or legal status" of the debt. 15 U.S.C. § 1692e(2)(A). Second, a debt collector is prohibited from threatening to "take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). Third, a debt collector may not use "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a customer." 15 U.S.C. § 1692e(10).

This section of the statute operates under a strict liability theory. *See Stratton*, 770 F.3d at 449−50. "To determine if a debt collector's actions are false, deceptive, or misleading under § 1692e, courts use the 'least sophisticated consumer' standard." *Anger v. Accretive Health, Inc.*, No. 14-cv-12864, 2015 WL 5063269, *3 (E.D. Mich. Aug. 27, 2015) (quoting *Stratton*, 770 F.3d at 450). However, a statement must be "materially false or misleading" to violate this section. *Id.* It is "materially false" if it "would tend to mislead or confuse the reasonable unsophisticated consumer." *Wallace,* 683 F.3d at 327.

The Sextons assert that RA violated the statute by sending them a debt validation notice with an incorrect debt amount. [Record No. 1, ¶ 22] A validation notice is connected with the collection of a debt. *See* 15 U.S.C. § 1692e; *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011). However, the validation notice's statement regarding the debt

amount is not "materially false." *See Wallace*, 683 F.3d at 327. It does not tend to mislead the reasonable unsophisticated consumer because it spells out a procedure for disputing the debt and explains that the debt has not been verified. [Record No. 1-1, p. 2] In *Pierson*, the court held that where the plaintiff did not submit a written dispute in response to such a notice, the defendant was not obligated to verify the debt. 965 F. Supp. 2d at 967. As a result, the court concluded that the defendant did not "falsely represent the amount of the debt," in violation of 15 U.S.C. § 1692e. *Id.*

Likewise, in *Michael v. Javitch, Block & Rathbone, LLP*, the court held that the defendant did not violate § 1692e(2)(A) where it allegedly placed an incorrect debt amount in a debt validation letter. 825 F. Supp. 2d 913, 921 (N.D. Ohio 2011). The court reasoned that the "amount of the debt" is "the amount currently sought by the debt collector," and that the "[d]efendant may rely upon the representations of its client." *Id.* Additionally, the court stated that the defendant "was not required to independently investigate the status of the debt prior to sending the letter."[7] *Id.*; *see also Richeson*, 576 F. Supp. 2d at 867−68 (debt collector did not violate § 1692e(10) by sending notice to someone who was not the debtor because it "expressly informed Plaintiff that it did not[] investigate the factual underpinnings of the alleged debt," in compliance with § 1692g(a)); *Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 512 (6th Cir. 2007) (concluding that defendant did not violate § 1692e(10) because its notice complied with § 1692g(a)). In the present action, because the Sextons do not allege that they submitted a written dispute to RA in response to the validation notice, RA was not required to

---

[7] To the extent the plaintiffs claim that RA falsely represented the "legal status" of the debt due to the pending foreclosure action, the Court notes that the reasoning in *Michael* is applicable to that situation, as well. 825 F. Supp. 2d at 921.

verify the debt. Therefore, it did not employ a "false, deceptive, or misleading representation or means in connection with the collection" of the debt in violation of 15 U.S.C. § 1692e. *See Pierson*, 965 F. Supp. 2d at 967−68.[8]

### 6. § 1692f

Under 15 U.S.C. § 1692f, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." That section then "sets forth a non-exhaustive list of conduct that rises to that level." *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 534 (6th Cir. 2014). Only one of the specific examples appears to be relevant here. Debt collectors are prohibited from attempting to collect any amount that is not "expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

---

[8] The Sixth Circuit interprets the FDCPA very broadly, consistent with its remedial purpose. *See Stratton*, 770 F.3d at 448. For example, recent cases, such as *Anger*, have held that letters misstating the nature of a debt may violate § 1692e(2)(A). 2015 WL 5063269, *3; *see also Powers v. Credit Mgmt. Servs., Inc.*, No. 8:11CV436, 2016 WL 612251, *7 (D. Neb. Feb. 2, 2016) (discussing *Stratton*, 770 F.3d at 451). However, such cases did not involve validation notices, nor did they discuss the interplay between § 1692g and § 1692e. Further, a recent district court case in the Sixth Circuit expressed the reasoning in *Pierson*. *Lunger v. Escallate, LLC*, No. 5:15CV48, 2015 WL 10488877, *4 (N.D. Ohio Dec. 15, 2015). To reconcile these provisions of the statute, it is logically consistent to merely require the debt collector to accurately represent the amount it is seeking, based on the creditor's representations, when sending the consumer a debt validation notice.

Additionally, regarding § 1692e(5), the plaintiffs appear to contend that RA attempted to take action that could not legally be taken because the validation notice threatened foreclosure while BONY already had a pending foreclosure action against the Sextons. [Record No. 1, ¶¶ 16, 25] The Court has not become aware of state or federal law that would have been violated by RA's attempt to institute a second, simultaneous foreclosure proceeding (though it seems likely that consolidation would occur or that *res judicata* might bar certain proceedings). It is the plaintiffs' responsibility to allege such a violation. *See Haddad v. Randall S. Miller Assoc., PC*, 587 F. App'x 959, 962 (6th Cir. 2014). Moreover, because the October 31, 2014 letter informed the plaintiffs that the debt was unverified, a reasonable unsophisticated consumer would have realized he or she had a process for precluding a second foreclosure action. *See Wallace*, 683 F.3d at 327. Ultimately, RA was not required to verify the legal status of the debt in the validation letter. *See* 15 U.S.C. § 1692g(a)(4). In addition, the Sextons have not claimed that RA did not intend to collect on the underlying debt. *See* 15 U.S.C. § 1692e(5).

Section 1692f is "intended to cover actionable debt collection practices that may not be expressly addressed" in the other sections. *See Williams v. Javitch, Block & Rathbone, LLP*, 480 F. Supp. 2d 1016, 1023 (S.D. Ohio Mar. 22, 2007). In other words, a § 1692f claim fails where the plaintiff does not identify "conduct that would not be covered by a different FDCPA provision." *Smith v. Greystone Alliance, LLC*, No. 1:14CV722, 2015 WL 5232812, *1 (N.D. Ohio Sept. 8, 2015) (finding violation of § 1692d but not § 1692f); *Newton v. Portfolio Recovery Assoc., LLC*, No. 2:12-cv-698, 2014 WL 340414, *10 (S.D. Ohio Jan. 30, 2014) (finding no FDCPA violations where plaintiff claimed violations of several provisions of the statute but failed to identify what conduct violated only § 1692f).

The plaintiffs appear to claim that RA violated § 1692f by stating an incorrect debt amount in the validation notice and/or by sending a validation notice while its client had a pending foreclosure action against the plaintiffs. [Record No. 1, ¶¶ 22, 25] Regarding the misrepresentation of the debt amount, as a general matter, such conduct is covered by § 1692e(2). *See Newton*, 2014 WL 340414 at *10. Because another section of the FDCPA expressly covers that conduct, it appears at first glance that the Sextons fail to state a claim under § 1692f. *See Williams*, 480 F. Supp. 2d at 1023; *Smith*, 2015 WL 5232812, at *1.

However, because § 1692f covers unfair practices and § 1692e covers deceptive practices, § 1692f(1) covers some conduct that § 1692e(2) does not cover. *See Currier*, 762 F.3d at 534. To the extent the Sextons would make such an argument, "false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under §§ 1692e or 1692f." *Clark v. Lender Processing Servs.*, 562 F. App'x 460, 467 (6th Cir. 2014) (quoting *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir. 2010)). As discussed above, the representation concerning the debt amount was immaterial

due to the Sextons' failure to request verification upon receiving the proper § 1692g validation notice. Consequently, the plaintiffs' claim that RA violated § 1692f(1) by sending a validation notice with an incorrect debt amount fails as a matter of law.

With respect to the argument that RA violated § 1692f by threatening a foreclosure action while such an action had already been brought by client BONY, such conduct is more appropriately covered by 15 U.S.C. § 1692e(5), which covers threats to take action that cannot legally be taken or that the debt collector does not intend to take.[9] As a result, the Sextons fail to state a claim under § 1692f regarding this conduct. *See Williams*, 480 F. Supp. 2d at 1023; *Smith*, 2015 WL 5232812, at *1.

### B. Intrusion upon Seclusion Claim

The defendant argues that the Court should dismiss the state law invasion of privacy claim if it dismisses the federal claims against RA. *See United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). [Record No. 6, p. 15] According to 28 U.S.C. § 1367(c), the Court may decline to exercise supplemental jurisdiction if: (1) a claim raises a novel or complex state law issue; (2) the state law claim substantially predominates; (3) the Court has dismissed all claims over which it has original jurisdiction; or (4) other compelling reasons justify declining jurisdiction. RA indicates that the present circumstances fall under the third example; however, the Court is only dismissing the federal claims against one of the defendants in this action. Because federal claims still remain and the state law claim is heavily related to those

---

[9] To the extent § 1692f covers slightly different conduct, the plaintiffs were aware that the second foreclosure action could be prevented by submission of a written dispute. [Record No. 1-1] Further, as explained above, RA was not required to verify the status and validity of the debt, *see* 15 U.S.C. § 1692g(a)(3), (4); *Michael*, 825 F. Supp. 2d at 921. Thus, it would be inconsistent with § 1692g to allow for recovery under § 1692f under the facts alleged here.

claims, the Court will not decline to exercise supplemental jurisdiction over the state law claim against RA. *Compare with Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254–1255 (6th Cir. 1996) (discussing when "all federal claims are dismissed before trial").

For an intrusion upon seclusion claim, a plaintiff must allege: "(1) an intentional intrusion by the defendant, (2) into a matter that the plaintiff has a right to keep private, and (3) that the intrusion would be highly offensive to a reasonable person." *Wiles v. Ascom Transp. Sys., Inc.*, 478 F. App'x 283, 293–94 (6th Cir. 2012) (citing Restatement (Second) of Torts § 652B (1977)). In Count III, the Sextons allege that "[e]ach defendant intentionally interfered . . . with the solitude, seclusion and or private concerns or affairs of the Plaintiffs." [Record No. 1, ¶ 59] Further, they contend that each defendant engaged in "highly offensive conduct in the course of collecting a debt." [*Id.*, ¶ 60] Additionally, the plaintiffs state that they "have a reasonable expectation of privacy of solitude, seclusion, and or private concerns or affairs.[10] [*Id.*, ¶ 61]

The plaintiffs have failed to state a claim for intrusion upon seclusion because they have not identified the private "matters." *See Howard*, 2013 WL 1760299, *4. In *Howard*, the court determined that allegations such as "he had a reasonable expectation of privacy of solitude, seclusion, and or private concerns or affairs" and "intrusion by each Defendant occurred in ways that would be highly offensive to a reasonable person in that position" were insufficient as a matter of law. *Id.* (internal quotation marks omitted); *see also Rushing v.*

---

[10] Earlier in the Complaint, the Sextons assert that they "had a reasonable expectation of privacy of solitude, seclusion, and or private concerns or affairs." [Record No. 1, ¶ 47] Next, they state that each defendant's intrusion "occurred in ways that would be highly offensive to a reasonable person in that position." [*Id.*, ¶ 48] These allegations essentially mirror the allegations discussed above.

*Chase Auto Fin. Corp.*, No. 5:11-cv-419-JMH, 2012 WL 1752393, *4 (E.D. Ky. May 15, 2012). Because the Sextons fail to plead the second element of an intrusion upon seclusion claim under Kentucky law, this claim will be dismissed as against RA. *See Twombly*, 550 U.S. at 555 (stating that "labels and conclusions, and a formulaic recitation of the elements of a cause of action" are insufficient to survive a motion to dismiss).

C.   **Motion to Strike**

The defendant also asserts that the Court should strike the plaintiffs' request for statutory damages for each violation of the FDCPA. [Record No. 1, ¶¶ 53, 57] The Court need not reach this issue because it will dismiss the FDCPA claims against RA. However, it notes that the Sextons may only recover $1,000 under 15 U.S.C. § 1692k(a)(2)(A) per proceeding, not per violation. *See Wright v. Fin. Serv. of Norwalk, Inc.*, 22 F.3d 647, 651 (6th Cir. 1994).

**IV.**

The Sextons' Complaint fails to state a claim against Defendant Reisenfeld and Associates upon which relief can be granted. Accordingly, it is hereby

**ORDERED** as follows:

1.   Defendant Reisenfeld and Associates' motion to dismiss [Record No. 6] is **GRANTED**.

2.   The defendant's motion to strike [Record No. 6] is **DENIED**, as moot.

3.   All claims asserted in this action against Reisenfeld and Associates are **DISMISSED**, with prejudice. Reisenfeld and Associates is **DISMISSED** as a party to this case.

- 20 -

      4.      This Memorandum Opinion and Order does not affect the plaintiffs' claims against any other defendant.

This 4th day of May, 2016.

Signed By:
*Danny C. Reeves* DCR
United States District Judge