UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| THOMAS SEXTON and CHARLOTTE SEXTON, | ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 5: 15-329-DCR |
| V. | ) ) | |
| BANK OF NEW YORK MELLON, f/k/a Successor in interest to JP Morgan Chase Bank, NA as Trustee for IXIS Real Estate Capital Trust 2005-HE2, et al., | ) ) ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of the motion for judgment on the pleadings filed by Defendants Bank of New York Mellon ("BONY") and Select Portfolio Servicing ("SPS"). [Record No. 30] The defendants argue that Plaintiffs Thomas and Charlotte Sexton's claims against them should be dismissed for the same reasons that the Court dismissed the claims against Defendant Reisenfeld and Associates ("RA"). [Record No. 31, p. 1, *referring to* Record No. 23] For the reasons outlined below, the Court will grant the defendants' motion for judgment on the pleadings with respect to all claims except the claim premised on 15 U.S.C. § 1692c as it concerns Bank of New York Mellon.

**I.**

The plaintiffs allege that the defendants violated several provisions of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq.*, and that they invaded the plaintiffs' privacy by directing RA to send a "dunning" letter to the plaintiffs while the

plaintiffs were represented by counsel in a pending foreclosure action.  [Record No. 1]   A more detailed summary of the facts appears in the Court's May 4, 2016 Memorandum Opinion and Order.  [Record No. 23, pp. 1−3]

On March 31, 2009, Bank of New York Mellon, as successor to JPMorgan Chase Bank, N.A., filed a foreclosure action against the Sextons in Bourbon Circuit Court, attempting to collect $99.668.30, as well as accrued interest and costs.  The action was filed following an alleged default on a loan secured by property conveyed to the Sextons.  [Record Nos. 1, ¶¶ 8, 34; 1-3]  Sixteen days later, Mortgage Electronic Registration Systems, Inc. ("MERS") assigned the loan to Mortgage Pass-Through Certificates, Series 2002-HE2.  [Record Nos. 1, ¶ 33; 1-4]  On May 11, 2009, the Sextons, represented by attorney Brian T. Canupp, filed their answer in the Bourbon Circuit Court.  [Record No. 1, ¶ 10]

On September 15, 2011, MERS assigned the loan to IXIS Capital Trust 2005-HE2.  [*Id.*, ¶ 32; Record No. 1-3]  In January 2014, Select Portfolio Servicing ("SPS") became the servicer of the loan.  [Record No. 1, ¶ 31]  The foreclosure case was dismissed for lack of prosecution on May 5, 2015.  [*Id.*, ¶ 24; Record No. 1-2]  On October 31, 2014, while the foreclosure action was still pending, law firm RA, retained by SPS to act on BONY's behalf, sent a debt validation notice to the plaintiffs.  [Record No. 1, ¶¶ 12, 18]  The notice claimed that RA was a debt collector representing the interests of BONY.  It stated, in relevant part:

> [t]he Creditor has represented to us that the Loan is in default because of non-payment of the Debt.  We have been asked by the Creditor to bring a foreclosure on the real estate which secures the repayment of the Debt.  This Notice is required to be sent to advise you of certain rights provided to you by Law.

[Record No. 1-1, p. 1]  The notice identified the "Original Amount Financed" as $104,500.00.  [*Id.*]  It also explained that "[t]he Creditor has represented that as of the date of this letter the

total balance of your loan is $167,145.93.  Because of interest, late charges, and other charges

. . . the amount due on the day you pay may be greater."  [*Id.*, p. 2]  The notice went on to

advise:

> [u]nless you notify this office within thirty (30) days after receiving this Notice
> that you dispute the validity of this Debt . . . this office will assume that the Debt
> is valid.  If you notify this office in writing within thirty (30) days from receiving
> this Notice, this office must obtain verification of the Debt . . . .

[*Id.*]  The plaintiffs received the letter on or about November 5, 2014.  They do not claim to

have responded to the letter.  [Record No. 1, ¶ 13]  The Sextons assert that the amount

identified in the letter was not the amount sought by BONY in Bourbon Circuit Court, and

they deny the alleged debt.  [*Id.*, ¶¶ 27, 29]

This action was initiated on November 2, 2015.  [Record No. 1]  On May 4, 2016, the

Court dismissed the plaintiffs' claims against RA because they failed to properly plead the

FDCPA elements and/or allege facts supporting the different theories of recovery.  [Record

No. 23]  The present motion for judgment on the pleadings was filed on June 13, 2016.  [Record

No. 30]  The plaintiffs did not file a response in opposition to the motion, so it now stands ripe

for review.[1]

## II.

The standard of review for motions for judgment on the pleadings under Rule 12(c) of

the Federal Rules of Civil Procedure is the same as that for motions to dismiss under Rule

12(b)(6).  *See Roth v. Guzman*, 650 F.3d 603, 605 (6th Cir. 2011); *Horen v. Bd. of Educ. of*

---

[1]     While courts may sometimes deem a plaintiff to have waived opposition to a motion by
failing to respond, this Court, as in the previous Memorandum Opinion and Order, has not deemed
the plaintiffs to have waived their opposition here.  *See Scott v. Tenn.*, 878 F.2d 382 (table), 1989
WL 72470, *2 (6th Cir. 1989).

*Toledo City School Dist.*, 594 F. Supp. 2d 833, 841 (N.D. Ohio 2009).  Under that rule, the Court must determine whether the Complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  Although the Complaint need not contain "detailed factual allegations" to survive a motion for judgment on the pleadings, the "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).

In considering a motion under the Rule 12(b)(6) standard, the Court must "accept all of plaintiff's factual allegations as true and determine whether any set of facts consistent with the allegations would entitle the plaintiff to relief."  *G.M. Eng'rs & Assoc., Inc. v. W. Bloomfield Twp.*, 922 F.2d 328, 330 (6th Cir. 1990) (citation omitted).  However, the Court need not accept as true legal conclusions cast in the form of factual allegations if those conclusions cannot be plausibly drawn from the facts, as alleged.  *See Iqbal*, 556 U.S. at 678 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."); *see also Papasan v. Allain*, 478 U.S. 265, 286 (1986).  Thus, Rule 12(b)(6) essentially "allows the Court to dismiss, on the basis of a dispositive issue of law, meritless cases which would otherwise waste judicial resources and result in unnecessary discovery."  *Glassman, Edwards, Wade & Wyatt, P.C. v. Wolf Haldenstein Adler Freeman & Herz, LLP*, 601 F. Supp. 2d 991, 997 (W.D. Tenn. 2009).

- 4 -

Although the defendants suggest that the Court evaluate the motion for judgment on the pleadings under the Rule 56 summary judgment standard, it is not necessary to do so here. [Record No. 31, p. 2]  In particular, the defendants argue that the plaintiffs have "admitted" certain facts by failing to respond to their interrogatories and requests for admissions.  [*Id.*, p. 5]  Although the Court will deem certain facts admitted,[2] the Court need not address the deemed facts to dismiss most of the claims against the remaining defendants.  Further, the deemed facts do not affect the claim that will not be dismissed as to BONY.  As a result, the Court declines to utilize the Rule 56 standard.

### III.

### A.      FDCPA Claims

The Sextons argue that BONY and SPS violated several provisions of the FDCPA by directing RA to send them the October 31, 2014 letter, specifically: 15 U.S.C. §§ 1692c; 1692c(a)(2); 1692d; 1692e; 1692e(2); 1692e(5); 1692e(10); 1692f; 1692g; and 1692(j). [Record No. 1, ¶¶ 27, 35]  The FDCPA prohibits the use of "false, deceptive, or misleading representation or means in connection with the collection of any debt" and the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or

---

[2]      Under Rule 36, which addresses requests for admissions, "[a] matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3).  BONY and SPS served the plaintiffs with requests for admissions on February 12, 2016.  [Record Nos. 32, ¶ 6; 32-1, pp. 21−26]  The plaintiffs had not responded to the requests as of June 13, 2016.  [Record No. 32, ¶ 9]  As a result, the facts appearing in the nine requests for admissions are deemed admitted.  *See United States v. Petroff-Kline*, 557 F.3d 285, 293 (6th Cir. 2009) (district courts have discretion regarding whether to deem facts admitted when there is a failure to respond to requests for admissions).

permitted by law." 15 U.S.C. §§ 1692e, 1692f(1). Where a plaintiff brings claims under the FDCPA, the claims are tested under the "least sophisticated consumer" standard; that is, "whether the least sophisticated consumer would be misled by [the] defendant's actions." *Wallace v. Wash. Mut. Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012) (internal quotation marks omitted). The purpose of the FDCPA is to protect consumers from abusive, deceptive, and unfair debt collection practices. 15 U.S.C. § 1692, *et seq.* It should be construed broadly to accomplish this purpose. *Stratton v. Portfolio Recovery Assoc., LLC*, 770 F.3d 443, 448 (6th Cir. 2014).

For the purposes of analyzing the arguments in the present motion for judgment on the pleadings, the Court has presumed that BONY is a "debt collector" and that the Sextons are "consumers" within the meaning of the FDCPA, 15 U.S.C. §§ 1692a(3), (6) and 1692c(d), based on the Sextons' allegations. [Record No. 1, ¶¶ 4, 5] However, SPS claims that the plaintiffs have not alleged that it is a "debt collector," meaning the plaintiffs fail to state any claims under the FDCPA against it. [Record No. 31, p. 8] The Court will address that issue before addressing the Sextons' individual claims.

The plaintiffs need not use the exact term "debt collector" regarding SPS to successfully allege that SPS is a debt collector. Instead, their allegations must "address[] all elements of the statutory definition of debt collector." *Bridge v. Ocwen Fed. Bank, FSB*, 681 F.3d 355, 360 (6th Cir. 2012). Although there is an exemption for loan servicers, a "loan servicer will become a debt collector" under the FDCPA "if the debt was in default or treated as such when it was acquired." *Id.* at 360 n.4.

The Sextons allege in the Complaint that SPS used the mail to collect on a debt owed to another. *See* 15 U.S.C. § 1692a(6). [Record No. 1, ¶¶ 12, 17−19] However, they do not

assert that SPS' business' "principal purpose" was the collection of debts or the enforcement of security interests. *See id.* Nor do they identify facts that would lead to such a conclusion. Additionally, they do not identify facts indicating that SPS is a "creditor" using a name other than its own to collect the debt. *See id.*; 15 U.S.C. § 1692a(4). Moreover, they do not allege that SPS "regularly collects or attempts to collect" debts owed to another. *See* 15 U.S.C. § 1692a(6). As a result, the plaintiffs fail to allege that SPS is a debt collector under the Act. *See Finley v. Kondaur Capital Corp.*, 909 F. Supp. 2d 969, 981 (W.D. Tenn. 2012); *Golliday v. Chase Home Finance, LLC*, 761 F. Supp. 2d 629, 635 (W.D. Mich. 2011) ("The amended complaint fails to allege even the conclusion that the firm is a debt collector, let alone allege facts that would plausibly tend to show that the firm is a debt collector."). Therefore, all of the FDCPA claims, except the claim under 15 U.S.C. § 1692j,[3] against SPS must be dismissed.

### 1.      § 1692c

The defendants contend that the allegations of the Complaint are deficient with regard to the claim under 15 U.S.C. § 1692c(a)(2). The defendants argue that, because the Court found the Complaint to be deficient with respect to RA, they cannot be found vicariously liable for the actions of RA. [Record No. 31, p. 8]

Under this section of the FDCPA,[4] a "debt collector may not communicate with a consumer in connection with the collection of any debt . . . if the debt collector knows the

---

[3]      That provision is not restricted to debt collectors.

[4]      Although the plaintiffs identify § 1692c separately from § 1692c(a)(2) [Record No. 1, ¶ 35], none of the other subsections appear to apply to the allegations in the Complaint. For instance, no alleged facts support a theory that BONY or SPS communicated with third parties, § 1692c(b), or that BONY or SPS refused to cease communications following written notification from the plaintiffs, § 1692c(c).

consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's name and address, . . ." 15 U.S.C. § 1692c(a)(2).[5]  In other words, a debt collector violates this section of the Act by communicating directly with a consumer "despite having knowledge" that the consumer is represented by counsel.  *Estep v. Manley Deas Kochalski, LLC*, 552 F. App'x 502, 504 (6th Cir. 2014).

The Court dismissed the § 1692c(a)(2) claim against RA because the plaintiffs did not allege that RA had knowledge that the Sextons were represented by an attorney with respect to the debt.  *See Schmitt v. FMA Alliance*, 398 F.3d 995, 997 (8th Cir. 2005); *Mullen v. Compton*, No. 2:11-cv-1159, 2013 WL 372470, *4 (S.D. Ohio. Jan. 30, 2013).  [Record No. 23, p. 7]  Nor did they identify facts from which the Court could infer knowledge on the part of RA.  *See, e.g.*, *Hubbard v. Nat'l Bond and Collection Assoc., Inc.*, 126 B.R. 422, 427 (D. Del. 1991).  [*Id.*]  However, the Complaint *does* allege that BONY and SPS had knowledge that the plaintiffs were represented by an attorney with respect to the debt.  [Record No. 1, ¶¶ 41, 42]  But the defendants argue that the Sextons fail to state a claim against them because the Sextons do not identify an attempted communication by the particular defendants.  [Record No. 31, p. 8]  In other words, they assert that RA is the only party responsible for sending the debt validation notice.  That argument is not persuasive.

"Debt collectors employing attorneys or other agents to carry out debt collection practices that violate the FDCPA are vicariously liable for their agent's conduct."  *Martinez v. Albuquerque Collection Servs., Inc.*, 867 F. Supp. 1495, 1502 (D.N.M. 1994).  Otherwise, a debt collector "could evade the FDCPA by hiring [an] attorney to do what it could not do."  *Id.*

---

[5]     This provision includes some exceptions, but they are not relevant here.

(citing 17 Am. Jur. Consumer Protection § 200 (2d ed. 1990)).  To avoid vicarious liability, the defendants contend that they are not liable because RA committed no underlying violation due to its lack of knowledge regarding the plaintiffs' representation.  [Record No. 31, p. 8] However, that contention ignores the fact that, while an agent's actions within the scope of its authority are imputed to the principal, *Meyer v. Holley*, 537 U.S. 280, 285 (2003), such imputation does not eliminate the principal's knowledge.  *See, e.g.*, *Koehring Finance Corp. v. Crane & Machinery, Inc.*, No. 84-C-1002, 1986 WL 2748, *1 (N.D. Ill. Feb. 20, 1986) (considering argument that principal using innocent agent as a pawn in a scheme to defraud could still be liable for misrepresentation).  It would be contrary to the reasoning expressed in *Martinez*[6] and the remedial purpose of the FDCPA to permit principals to avoid liability by hiring agents to do their bidding while keeping the agents in the dark about violations they may be committing.  *See, e.g.*, *Schutz v. Arrow Financial Servs., LLC*, 465 F. Supp. 2d 872, 876 (N.D. Ill. 2006); *Beach v. LVLN Funding, LLC*, No. 12-CV-778, 2013 WL 1878938, *2 (E.D. Wis. May 3, 2013).

Further, to the extent the defendants argue that they did not actually send the communication themselves, this distinction is immaterial.  *See, e.g.*, *Pollice v. Nat'l Tax Funding, L.P.*, 225 F.3d 379, 405 (3d Cir. 2000) (stating that a debt collector "should bear the burden of monitoring the activities of those it enlists to collect debts on its behalf"); *Duby v. Shermeta, Adams & Von Allmen, P.C.*, No. 12-12775, 2012 WL 6705413, *6 (E.D. Mich. Dec. 26, 2012) (considering contact by defendant's attorney-agent to be contact by the defendant); *DeFazio v. Leading Edge Recovery Solutions, LLC*, No. 2:10-cv-2945-WJM-MF, 2010 WL

---

[6]     In *Martinez*, the defendant was held liable for the venue selection error of its attorney even though the attorney was not involved in the lawsuit.  867 F. Supp. at 1502.

5146765, *3 (D.N.J. Dec. 13, 2010) (determining that it was unclear whether debt collector was vicariously liable for actions carried out by another on its behalf). Consequently, the Court will not dismiss the § 1692c(a)(2) claim against BONY and SPS simply because the claim was dismissed as against RA due RA's lack of knowledge.

However, the claim will be dismissed as to SPS because the Complaint fails to allege that SPS is a "debt collector" within the meaning of the statute. *See Wadlington v. Credit Acceptance Corp.*, 76 F.3d 103, 108 (6th Cir. 1996); *Robbins v. Mortgage Electronic Registration Systems, Inc.*, No. 1:09–CV–295, 2009 WL 3757443, at *5 (W.D. Mich. Nov. 9, 2009).

### 2.    § 1692g

In its initial communications with a consumer, a debt collector must send the consumer a written notice containing: (i) the amount of the debt; (ii) the name of the creditor; (iii) a statement that the debt will be assumed valid unless the consumer disputes the validity of the debt within thirty days of receiving the notice; (iv) a statement that the debt collector will obtain verification of the debt if the consumer notifies it in writing within thirty days that the debt is disputed; and (v) a statement that the debt collector will provide the name and address of the original creditor upon written request of the consumer.  15 U.S.C. § 1692g(a)(1)−(5).

This Court dismissed the § 1692g claim against RA because the debt validation notice complied with the requirements of 15 U.S.C. § 1692g(a).  [Record No. 23, p. 8, *referring to* Record No. 1-1]  To the extent the plaintiffs alleged a violation of § 1692g(b), which requires a debt collector to cease collection until it has verified the debt under certain circumstances, the undersigned concluded that the Sextons failed to trigger that provision by not submitting written notification of their dispute.  *See Howard v. Asset Acceptance, LLC*, No. 5:12-316-

DCR, 2013 WL 1760299, *4 (E.D. Ky. Apr. 24, 2013). [Record No. 23, p. 9] The plaintiffs' § 1692g claims with respect to BONY and SPS will be dismissed for the same reasons. The Sextons fail to allege how the debt validation notice is deficient. In addition, they do not assert that they triggered the cease-and-desist requirement of § 1692g(b). Therefore, the § 1692g claims will be dismissed.

### 3.      § 1692j

Under the FDCPA:

> [i]t is unlawful to design, compile, and furnish any form knowing that such form would be used to create the false belief in a consumer that a person other than the creditor of such consumer is participating in the collection of or in an attempt to collect a debt such consumer allegedly owes such creditor, when in fact such person is not so participating.

15 U.S.C. § 1692j(a). This provision prohibits "flat-rating," where an entity lends its name to a creditor for "intimidation value" in exchange for a "flat" rate for the letter. *Nielsen v. Dickerson*, 307 F.3d 623, 639 (7th Cir. 2002); *see also Byrd v. Law Offices of John D. Clunk Co., LPA*, No. 1:09-cv-076, 2010 WL 816932, *7 (S.D. Ohio Mar. 8, 2010). In other words, a flat-rater is not involved in debt collection. *Randle v. GC Servs. L.P.*, 48 F. Supp. 2d 835, 841 (N.D. Ill. 1999).

In the previous Memorandum Opinion and Order, the Court determined that the Sextons made no showing that they were entitled to relief under this section because they contended that RA was attempting to collect on the debt with its October 31, 2014 letter. *See, e.g.*, *Savage v. Hatcher*, 109 F. App'x 759, 762 (6th Cir. 2004); *Henry v. Mortg. Elec. Registration Sys., Inc.*, No. 2:15-cv-12469, 2015 WL 9487859 (E.D. Mich. Nov. 30, 2015); *Byrd*, 2010 WL 816932, at *7. [Record No. 23, p. 10, *referring to* Record No. 1, ¶ 17] Likewise, the plaintiffs assert that either BONY or SPS was attempting to collect on the debt,

- 11 -

meaning the two defendants were not falsely representing an intent to collect on the debt. *See Randle*, 48 F. Supp. 2d at 841.  [Record No. 1, ¶¶ 27−28]  In any event, the Sextons never claim that RA lent its name to BONY or SPS for "intimidation value" in exchange for a flat rate. *See Nielsen*, 307 F.3d at 639.  As a result, the plaintiffs fail to state a claim that BONY or SPS violated 15 U.S.C. § 1692j.

### 4. § 1692d

According to 15 U.S.C. § 1692d, "[a] debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt."  That section then sets out six examples of violations: (i) the use or threat of violence or other criminal means to harm a person or his property; (ii) the use of obscene or abusive language; (iii) the publication of a list of non-paying consumers; (iv) the advertisement for sale of a debt to coerce payment; (v) continuously calling a person to annoy or harass him; and (vi) placing telephone calls without disclosing the caller's identity.   15 U.S.C. § 1692d(1)−(6).

Courts have dismissed claims premised on facts that do not have the "natural consequence of harassing or abusing a debtor." *Harvey v. Great Seneca Fin. Corp.*, 453 F.3d 324, 330 (6th Cir. 2006).  In *Harvey*, the court held that the "single filing of a debt-collection lawsuit" did not constitute a violation of § 1692d.  *Id.*  Likewise, a debt collector does not violate that section of the statute by mailing the consumers a bill. *Masterson v. Meade Cnty. Fiscal Ct.*, 489 F. Supp. 2d 740, 758 (W.D. Ky. 2007).

The Complaint asserts that BONY and SPS violated § 1692d by directing RA to send the Sextons, rather than their counsel, the October 31, 2014 letter, which contained an incorrect debt amount.  [Record No. 1, ¶¶ 12, 22−23]  As stated in the previous Memorandum Opinion

and Order, the "transmission of a single collection letter to a represented debtor" does not, as a matter of law, "have a natural consequence of harassing or abusing a debtor." *Eslava v. AllianceOne Receivables Mgmt., Inc.*, Civil Action No. 12-0425-WS-N, 2012 WL 4336012, *3 (S.D. Ala. Sept. 20, 2012). [Record No. 23, p. 11] While the debt amount in the letter was allegedly incorrect, the letter clearly indicated that the stated amount was unverified and that the Sextons had a right to dispute the debt. [Record No. 1-1, p. 2] In light of the fact that debt collectors are not required to verify the amount of the debt before sending a validation notice, *see* 15 U.S.C. § 1692g(a)(4), BONY and SPS did not violated § 1692d by allegedly using RA to send a debt validation notice containing an incorrect debt amount to the plaintiffs.

To the extent the plaintiffs contend that the validation notice was abusive or harassing because BONY had instituted a foreclosure action against the Sextons in 2009 and the action was still pending, such a contention is not persuasive because of the dispute procedure spelled out in the notice. [Record No. 1-1, p. 2] Even the least sophisticated consumer would realize that BONY, SPS, and/or RA had not verified the debt and that he could trigger such verification. As stated previously, the Sextons' alleged facts do not suggest actions "likely to cause the suffering and anguish" contemplated by the Act. *See Harvey*, 453 F.3d at 330 (internal quotation marks omitted); *see also Wilson v. Merchants & Med. Credit Corp.*, No. 09-12996, 2010 WL 3488617, *4 (E.D. Mich. Sept. 2, 2010). [Record No. 23, p. 12] Therefore, this claim will be dismissed as to BONY and SPS for the same reasons it was dismissed as to RA.

### 5. § 1692e

Under 15 U.S.C. § 1692e, "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." That

section then sets out examples of conduct that violates the statute. Subsections (2), (5), and (10) are relevant here. First, a debt collector may not make a "false representation" concerning the "character, amount, or legal status" of the debt. 15 U.S.C. § 1692e(2)(A). Second, a debt collector is prohibited from threatening to "take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5). Third, a debt collector may not use "any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a customer." 15 U.S.C. § 1692e(10).

This section of the statute operates under a strict liability theory. *See Stratton*, 770 F.3d at 449−50. "To determine if a debt collector's actions are false, deceptive, or misleading under § 1692e, courts use the 'least sophisticated consumer' standard." *Anger v. Accretive Health, Inc.*, No. 14-cv-12864, 2015 WL 5063269, *3 (E.D. Mich. Aug. 27, 2015) (quoting *Stratton*, 770 F.3d at 450). However, a statement must be "materially false or misleading" to violate this section. *Id.* It is "materially false" if it "would tend to mislead or confuse the reasonable unsophisticated consumer." *Wallace,* 683 F.3d at 327.

The Sextons assert that BONY and SPS violated the statute by directing RA to send them a debt validation notice with an incorrect debt amount. [Record No. 1, ¶¶ 18, 22] A validation notice is connected with the collection of a debt. *See* 15 U.S.C. § 1692e; *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011). In the prior Memorandum Opinion and Order, the Court determined that the October 31, 2014 validation notice's statement regarding the debt amount was not "materially false" because it would not tend to mislead the reasonable unsophisticated consumer. *See Wallace*, 683 F.3d at 327. [Record No. 23, pp. 13−14] More specifically, a reasonable unsophisticated consumer would not be misled

where the notice spells out a procedure for disputing the debt and explains that the debt has not been verified.  [Record No. 1-1, p. 2]

Because BONY and SPS were not required to verify the debt without a written dispute from the plaintiffs, they did not "falsely represent the amount of the debt," in violation of 15 U.S.C. § 1692e(2)(A).  *See Pierson v. Franklin Collection Serv., Inc.*, 965 F. Supp. 2d 957, 967 (E.D. Tenn. 2013); *Michael v. Javitch, Block & Rathbone, LLP*, 825 F. Supp. 2d 913, 921 (N.D. Ohio 2011).  Likewise, the defendants did not violate § 1692e(10).  *See Richeson v. Javitch, Block & Rathbone, LLP*, 576 F. Supp. 2d 861, 867−68 (N.D. Ohio 2008); *see also Fed. Home Loan Mortg. Corp. v. Lamar*, 503 F.3d 504, 512 (6th Cir. 2007).  Further, in general, they did not employ a "false, deceptive, or misleading representation or means in connection with the collection" of the debt in violation of 15 U.S.C. § 1692e.  *See Pierson*, 965 F. Supp. 2d at 967−68.[7]

---

[7]     As noted in the prior Memorandum Opinion and Order, recent cases, such as *Anger*, have held that letters misstating the nature of a debt may violate § 1692e(2)(A).  2015 WL 5063269, *3; *see also Powers v. Credit Mgmt. Servs., Inc.*, No. 8:11CV436, 2016 WL 612251, *7 (D. Neb. Feb. 2, 2016) (discussing *Stratton*, 770 F.3d at 451).  [Record No. 23, p. 15 n.8]  However, such cases did not involve validation notices, nor did they discuss the interplay between § 1692g and § 1692e.  Further, a recent district court case in the Sixth Circuit expressed the reasoning in *Pierson*.  *Lunger v. Escallate, LLC*, No. 5:15CV48, 2015 WL 10488877, *4 (N.D. Ohio Dec. 15, 2015).  To reconcile these provisions of the statute, it is logically consistent to merely require the debt collector to accurately represent the amount it is seeking when sending the consumer a debt validation notice.

        Additionally, regarding § 1692e(5), the plaintiffs appear to contend that BONY and SPS attempted to take action that could not legally be taken because the validation notice threatened foreclosure while BONY already had a pending foreclosure action against the Sextons.  [Record No. 1, ¶¶ 16, 25]  The Court is unaware of state or federal law that would have been violated by BONY's and/or SPS's attempt to institute a second, simultaneous foreclosure proceeding (though it seems likely that consolidation would occur or that *res judicata* might bar certain proceedings).  It is the plaintiffs' responsibility to allege such a violation.  *See Haddad v. Randall S. Miller Assoc., PC*, 587 F. App'x 959, 962 (6th Cir. 2014).  Moreover, because the October 31, 2014 letter informed the plaintiffs that the debt was unverified, a reasonable unsophisticated consumer would

**6.** **§ 1692f**

Under 15 U.S.C. § 1692f, "[a] debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." That section then "sets forth a non-exhaustive list of conduct that rises to that level." *Currier v. First Resolution Inv. Corp.*, 762 F.3d 529, 534 (6th Cir. 2014). Only one of the specific examples appears to be relevant here.

Debt collectors are prohibited from attempting to collect any amount that is not "expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). Section 1692f is "intended to cover actionable debt collection practices that may not be expressly addressed" in the other sections. *See Williams v. Javitch, Block & Rathbone, LLP*, 480 F. Supp. 2d 1016, 1023 (S.D. Ohio Mar. 22, 2007). In other words, a § 1692f claim fails where the plaintiff does not identify "conduct that would not be covered by a different FDCPA provision." *Smith v. Greystone Alliance, LLC*, No. 1:14CV722, 2015 WL 5232812, *1 (N.D. Ohio Sept. 8, 2015) (finding violation of § 1692d but not § 1692f); *Newton v. Portfolio Recovery Assoc., LLC*, No. 2:12-cv-698, 2014 WL 340414, *10 (S.D. Ohio Jan. 30, 2014) (finding no FDCPA violations where plaintiff claimed violations of several provisions of the statute but failed to identify what conduct violated only § 1692f).

The plaintiffs appear to claim that BONY and SPS violated § 1692f by stating an incorrect debt amount in the validation notice and/or by sending a validation notice while BONY had a pending foreclosure action against the plaintiffs. [Record No. 1, ¶¶ 22, 25] The

have realized he or she had a process for precluding a second foreclosure action. *See Wallace*, 683 F.3d at 327. Ultimately, BONY and SPS were not required to verify the legal status of the debt before sending the validation letter. *See* 15 U.S.C. § 1692g(a)(4). In addition, the Sextons have not claimed that BONY and SPS did not intend to collect on the underlying debt. *See* 15 U.S.C. § 1692e(5).

allegation concerning misrepresentation of the debt amount is covered by § 1692e(2)(A).  *See Newton*, 2014 WL 340414, at *10.  Because another section of the FDCPA expressly covers that conduct, it appears at first glance that the Sextons fail to state a claim under § 1692f.  *See Williams*, 480 F. Supp. 2d at 1023; *Smith*, 2015 WL 5232812, at *1.

However, to the extent the Sextons argue that § 1692f covers some conduct that § 1692e(2) does not cover, *see Currier*, 762 F.3d at 534, "false but non-material representations are not likely to mislead the least sophisticated consumer and therefore are not actionable under §§ 1692e or 1692f." *Clark v. Lender Processing Servs.*, 562 F. App'x 460, 467 (6th Cir. 2014) (quoting *Donohue v. Quick Collect, Inc.*, 592 F.3d 1027, 1033 (9th Cir.  2010)).  As discussed above, the representation concerning the debt amount was immaterial due to the Sextons' failure to request verification upon receiving the proper § 1692g validation notice. Consequently, the plaintiffs' claim that BONY and SPS violated § 1692f(1) by sending a validation notice with an incorrect debt amount fails as a matter of law.

With respect to the argument that BONY and SPS violated § 1692f by threatening to bring another simultaneous foreclosure action, such conduct is more appropriately covered by 15 U.S.C. § 1692e(5), which covers threats to take action that cannot legally be taken or that the debt collector does not intend to take.[8]  As a result, the Sextons fail to state a claim under § 1692f regarding that conduct.  *See Williams*, 480 F. Supp. 2d at 1023; *Smith*, 2015 WL 5232812, at *1.

---

[8]     To the extent § 1692f covers slightly different conduct, the plaintiffs were aware that the second foreclosure action could be prevented by submission of a written dispute.  [Record No. 1-1]  Further, as explained above, BONY and SPS were not required to verify the status and validity of the debt, *see* 15 U.S.C. § 1692g(a)(3), (4); *Michael*, 825 F. Supp. 2d at 921.  Thus, it would be inconsistent with § 1692g to allow for recovery under § 1692f under the facts alleged here.

### B.       Intrusion upon Seclusion Claim

The defendants argue that the Court should dismiss the state law invasion of privacy claim against them for the same reasons it dismissed that claim against RA.  [Record No. 31, p. 12]  For an intrusion upon seclusion claim, a plaintiff must allege: "(1) an intentional intrusion by the defendant, (2) into a matter that the plaintiff has a right to keep private, and (3) that the intrusion would be highly offensive to a reasonable person."  *Wiles v. Ascom Transp. Sys., Inc.*, 478 F. App'x 283, 293–94 (6th Cir. 2012) (citing Restatement (Second) of Torts § 652B (1977)).

In Count III, the Sextons allege that "[e]ach defendant intentionally interfered . . . with the solitude, seclusion and or private concerns or affairs of the Plaintiffs."  [Record No. 1, ¶ 59]  Further, they contend that each defendant engaged in "highly offensive conduct in the course of collecting a debt."  [*Id.*, ¶ 60]  Additionally, the plaintiffs state that they "have a reasonable expectation of privacy of solitude, seclusion, and or private concerns or affairs.[9] [*Id.*, ¶ 61]

The plaintiffs have failed to state a claim for intrusion upon seclusion because they have not identified the private "matters."  *See Howard*, 2013 WL 1760299, at *4; *Rushing v. Chase Auto Fin. Corp.*, No. 5:11-cv-419-JMH, 2012 WL 1752393, *4 (E.D. Ky. May 15, 2012).  Because the Sextons fail to plead the second element of an intrusion upon seclusion claim under Kentucky law, this claim will be dismissed as against BONY and SPS.  *See*

---

[9]       Earlier in the Complaint, the Sextons assert that they "had a reasonable expectation of privacy of solitude, seclusion, and or private concerns or affairs."  [Record No. 1, ¶ 47]  Next, they state that each defendant's intrusion "occurred in ways that would be highly offensive to a reasonable person in that position."  [*Id.*, ¶ 48]  These allegations essentially mirror the allegations discussed above.

*Twombly*, 550 U.S. at 555 (stating that "labels and conclusions, and a formulaic recitation of the elements of a cause of action" are insufficient to survive a motion to dismiss).

**IV.**

The Sextons fail to state a claim against BONY and SPS with regard to violations of sections 1692g, 1692j, 1692d, 1692e, and 1692f of the FDCPA.  Further, they fail to state a claim of intrusion upon seclusion against those defendants.  Moreover, SPS cannot be held liable for RA's contact with the plaintiffs under 15 U.S.C. § 1692c(a)(2) because the Sextons do not allege that SPS is a debt collector.  However, the plaintiffs have successfully stated a claim against BONY under § 1692c(a)(2).  Accordingly, it is hereby

**ORDERED** as follows:

1.    Defendants Bank of New York Mellon's and Select Portfolio Servicing's motion for judgment on the pleadings [Record No. 30] is **GRANTED**, in part, with respect to the following parties and claims:

      a.    the intrusion upon seclusion claim as to both defendants;

      b.    the claims under 15 U.S.C. §§ 1692g, 1692j, 1692d, 1692e, and 1692f as to both defendants; and

      c.    the claim under 15 U.S.C. § 1692c as to Select Portfolio Servicing.

2.    The defendants' motion for judgment on the pleadings [Record No. 30] is **DENIED** with respect to the remaining claim against Bank of New York Mellon.

This 28th day of July, 2016.



Signed By:

*Danny C. Reeves*

United States District Judge